# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

ANTONIO V.,[1]

                           Plaintiff,

        v.                                    3:23-CV-1006
                                                 (MJK)

LELAND DUDEK,
Acting Commissioner of Social Security

                           Defendant.

---

PETER A. GORTON ESQ., for Plaintiff
JASON P. PECK, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of a final decision of the Commissioner of Social Security, denying his application for benefits. (Dkt. No. 1). This matter was referred to me, for all proceedings and entry of a final judgment, under to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No.7). Both parties filed briefs (Dkt. Nos. 12, 16, 17), which the

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

1

Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.  PROCEDURAL HISTORY

On February 8, 2021, Plaintiff filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning April 19, 2019. (Administrative Transcript ("T.") 15, 296-305, 308-12)[2]. Plaintiff's applications were denied initially on August 13, 2021, and upon reconsideration on January 5, 2022. (T. 15, 87, 132). On June 2, 2022, Administrative Law Judge ("ALJ") Jennifer Smith conducted a hearing at which Plaintiff and vocational expert ("VE") Esperanza DiStefano testified. (T. 38-66). On June 15, 2022, the ALJ issued a decision denying Plaintiff's claims. (T. 15-31). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 11, 2023. (T. 1-6).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[2] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referred to as "T" and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns. All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . .. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F. 3d 409, 417 (2d Cir. 2013); *see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian*, 708 F. 3d at 418. If the plaintiff establishes that their impairment prevents them from performing their past work, the burden shifts to the Commissioner to prove the final step. (*Id*.).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F. 3d 145, 151 (2d Cir. 2012); *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F. 3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F. 3d at 151. It must be "more than a scintilla" of evidence scattered throughout the administrative record. (*Id*.). However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F. 3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F. 2d 255, 258 (2d Cir. 1988); *see also Selian*, 708 F. 3d at 417 ("the reviewing court is required to

examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F. 2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F. 2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See Miles v. Harris*, 645 F. 2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. THE ALJ'S DECISION

The ALJ determined at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity since April 19, 2019, the alleged onset date. (T. 18). At step two, the ALJ found Plaintiff had the following severe impairments: chronic pulmonary obstructive disease ("CPOD"), asthma, degenerative disc disease of the lumbar spine, hearing loss, depressive disorder, anxiety disorder, and history of substance abuse. (*Id.*). At the third step, the ALJ

determined Plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (T. 18-20).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except he is able to occasionally climb ramps and stairs but should not climb ladders, ropes, and scaffolds; should not balance as defined in the selected characteristics of occupations, kneel, crouch, and crawl; can occasionally stoop, push and pull; should not have concentrated exposure to respiratory irritants such as dust, odors, fumes, and gases, wetness and extreme hot and cold temperatures and humidity; can tolerate no more than moderate levels of noise as defined in Appendix D of the selected characteristics of occupations, 1993 edition; should be able to wear hearing aids at work; should be able to stand for two minutes at thirty- minute intervals; assume claimant can stay on task at the workstation during the position change; can understand, remember, and carry out simple instructions; can use judgment to make simple work-related decisions; should work in a job with no more than occasional changes in the routine work setting; cannot perform work requiring a specific production rate such as an assembly line or perform work which requires hourly quotas; should have no more than occasional contact with coworkers, supervisors, and the public; and should be able to use a cane for ambulation, but retains the ability to carry small objects with his free hand.

(T. 20-21).

In making the RFC determination, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 21). The ALJ further noted that she considered "the medical opinion(s) and prior administrative medical finding(s)" in accordance with the requirements of 20

6

C.F.R. §§ 404.1520(c) and 416.920(c). (*Id*.). After considering Plaintiff's statements regarding his symptoms, along with the other record evidence, the ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record.]" (T. 22).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (T. 29). Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of the VE and the Medical Vocational Rules in determining that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (T. 31). Accordingly, the ALJ concluded Plaintiff was not disabled. (*Id*.).

## IV. ISSUES IN CONTENTION

Plaintiff argues that remand is warranted because the ALJ's determinations are not supported by substantial evidence and is the product of legal error. (Dkt. No. 12 at 21). Specifically, Plaintiff contends the ALJ erred by:

1) erroneously finding that Plaintiff could work consistently without any limitations; and

2) erred in assessing the medical opinions of Drs. Amanda Slowik, Psy. D. and Richard Webster D.O. as well as those of the non-examining state agency psychologists.

(Dkt. No. 12 at 3-21).

Defendant contends the Commissioner's determination should be affirmed because the ALJ correctly and reasonably explained the "supportability" and "consistency" of the medical opinions when formulating the RFC. (Dkt. No. 16 at 4-10).

For the reasons stated below, the Court finds that the ALJ's RFC determination was supported by substantial evidence, and that she properly considered the supportability and consistency factors within the context of the medical opinions. Accordingly, remand is not warranted on the bases raised by Plaintiff, and the Commissioner's decision denying disability is affirmed.

## V. DISCUSSION

### A. RFC

#### 1. Legal Standard

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis. . . A 'regular and continuing basis' means eight hours a day, five days a week, or an equivalent work schedule." *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F. 3d 45, 52

(2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb. 13, 2019); *Genier v. Astrue*, 606 F. 3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F. 2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens*, 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-

medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F. 2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.*, 692 F. 3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

### 2. Analysis

Plaintiff argues "the ALJ errs because he fails to explain why he does not include any limitations to time off-task and/or attendance. . ." (Dkt. No. 12 at 10). Specifically, he argues "the ALJ completely ignores those portions of Kamin's and Blackwell's opinions finding moderate limitations to staying on task and/or maintain attendance." (*Id*.). He also argues that the RFC is unsupported by the

medical evidence of record. (*Id*.). The Court finds these arguments unpersuasive for the following reasons.

### a. Time off-task and/or attendance

Work pace and attendance both "fall[] under the category of concentration and persistence," *Tyler M. v. Saul*, No. 3:19-CV-426 (CFH), 2020 WL 5258344, at *11 (N.D.N.Y. Sep. 3, 2020) (quoting *Lowry v. Comm'r of Soc. Sec.*, No. 15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017)), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017), which "'refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings'" *Cox v. Astrue*, 993 F. Supp. 2d 169, 182 (N.D.N.Y. 2012). As the Commissioner notes, and this Court agrees, the Second Circuit has determined that moderate limitations in concentration, persistence, or pace are consistent with the ability to perform unskilled work. (Def. Br. at 7); *see also Matta v. Asture*, 508 F. App'x. 53, 55 (2d Cir. 2013) (summary order) ("[t]he ALJ found that [the] plaintiff had moderate difficulties in concentration, persistence, and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation marks and citation omitted); *Andrea N. v. Saul*, No. 3:18-CV-1186 (CFH), 2020 WL 1140512, at *6

(N.D.N.Y. Mar. 9, 2020) ("Accordingly, because the record evidence establishes that plaintiff has, at most, a moderate limitations in maintaining a regular work schedule and work-pace and the RFC specifically limits plaintiff to light work that involves only simple, routine tasks with minimal contact with coworkers, supervisors, or the public, the RFC adequately 'accounts for [the plaintiff's] limitations for performing activities within a schedule and maintaining regular attendance.'") (citations omitted).

The ALJ found Plaintiff had moderate limitations concentrating, persisting or maintaining pace. (T. 19). To support this conclusion, she analyzed opinions from consultative examiner Dr. Slowik, who opined that Plaintiff was markedly impaired in attention and concentration skills due to his physical pain and limited intellectual functioning (T. 793), state agency consultants E. Kamin, Ph. D., and L. Blackwell Ph. D., who both opined moderate limitations in concentrating, persisting or maintaining pace (T. 76, 97), Plaintiff's 2022 function report stating "he can pay attention all day and finishes things he starts" (T. 359), and reports throughout the longitudinal record of how he presented during examinations (T. 19, 625, 633, 642, 650, 657, 672, 679, 687, 694, 702, 710, 718, 728, 737, 745, 754, 763, 771, 788, 792; "[His] thought processes were coherent and goal directed with no evidence of hallucinations, delusions, or paranoia.").

While the Court agrees with Plaintiff in noting that "'attendance at medical appointments is unhelpful' in assessing the ability to consistent[ly] show up and successfully function in a work environment" this was not the ALJ's only reason for not supporting a marked limitations in sustaining an ordinary routine. (Dkt. No. 12 at 11). She also noted the state agency psychiatric consultants' findings that Plaintiff was not significantly limited in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and sustain an ordinary routine without special supervision. (T. 27, 83, 104). These were subcategories within rating Plaintiff's sustained concentration and persistence limitations. (T. 83, 104). "[A]n ALJ can look [] to a claimant's activities of daily living, which sometimes shed light on the ability to make and keep a routine and/or a daily schedule." *Leanne S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1447 (CFH), 2022 WL 4448245 at *22 (N.D.N.Y. Sept. 23, 2022) (quoting *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 156 (N.D.N.Y. 2021)) (citation omitted).

In the April 11, 2021 Function Report, and as Plaintiff testified, he does chores, cleans his house with a claw, watches television, prepares meals but has difficulties standing while doing so, does laundry, washes dishes for one hour at a time, takes the trash out, walks to places, uses social media, and plays video games. (T. 354-361, 797). Plaintiff also indicated he dresses, bathes, and grooms himself. (T. 355,

797). It is clearly within the ALJ's discretion to find that those limitations were more appropriately on the moderate rather than the marked range of functional ability. *See Maite V. v. Kijakazi*, No. 3:20-CV-899 (DJS), 2021 WL 6333101 at *4 (N.D.N.Y. Dec. 2, 2021) (allowed the ALJ to reconcile two medical opinions between the state agency medical consultant and the consultative examiner).

### b. RFC is supported by the medical evidence of record

When ALJ Smith formulated the RFC, she concluded that Plaintiff could perform sedentary work, should work in a job with no more than occasional changes in the routine work setting, could not perform work requiring a specific production rate such as an assembly line or perform work which requires hourly quotas, and could only have occasional contact with coworkers. (T. 21). As a result, to the extent Plaintiff argues the RFC failed to account for his work pace limitations and attendance, that contention is belied by the express language of the RFC. *See Eby v. Colvin*, 227 F. Supp. 3d 275, 279-80 (W.D.N.Y. 2017) ("The RFC determined by the ALJ, which limits [the] plaintiff to performing low-stress, goal-oriented work [-] and not production pace work [-] involving only simple tasks, adequately accounts for [the] plaintiff's moderate limitations in attention and concentration.").

Contrary to Plaintiff's arguments, the ALJ did not arbitrarily substitute her own judgment for competent medical opinions in deciding that the assessments for time

off task and absenteeism were speculative, and Plaintiff's measurements of activity. (Dkt. No. 12 at 12-14). Plaintiff argues that because Dr. Webster gave an explicit opinion concerning Plaintiff's time off task, the ALJ could not reject it by noting "what it does not say rather than what it does say." (Dkt. No. 12 at 14) (emphasis omitted). The ALJ is entitled to rely on what the record says as well as what it does not say. *See Dumas v. Schweiker*, 712 F. 2d 1545, 1553 (2d Cir. 1983); *see also Dias v. Shalala*, 59 F. 3d 307, 315 (2d Cir. 1995) (noting that the ALJ properly relied in the absence of finding in the record regarding the claimant's alleged inability to sit.). As an administrative finding, ALJ Smith bore the final responsibility for determining Plaintiff's RFC and she was well within her discretion to formulate an RFC that was based upon the record as a whole, even if the RFC did not reflect any one opinion in its entirety. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order); *see also Matta*, 508 F. App'x at 56 (noting that an ALJ's RFC does not need to "perfectly correspond with any of the opinions contained in the record"). It is apparent that ALJ Smith considered Plaintiff's capacity for work pace and attendance, and reasonably rejected portions of the medical opinions. *See Cichocki v. Asture*, 729 F. 3d at 178 n.3 ("An ALJ need not recite every piece of evidence that contributed to [his] decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision."). Accordingly, the Court concludes that the ALJ's RFC

formulation was supported by substantial evidence and that remand is not warranted.

### B. Evaluation of Medical Evidence

#### 1. Legal Standards

According to the applicable regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." (*Id*. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." (*Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1)); *see also Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinions with objective medical evidence and supporting explanation.").

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." (*Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2)); *see also Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.") *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

An ALJ must also consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. (*Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2)). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those

factors contained in paragraphs (c)(3) through (c)(5). (*Id*. at §§ 404.1520c(b)(3), 416.920c(b)(3)).

## 2. Analysis

### a. Psychiatric Evaluator Amanda Slowik, Psy. D.

Dr. Slowik conducted Plaintiff's consultative psychiatric evaluation. (T. 791-795). During the evaluation, Dr. Slowik noted that Plaintiff was cooperative; his social skills were adequate; his thought process was coherent, and goal directed; and his mood to be dysthymic and anxious. (T. 792). Moreover, Dr. Slowik noted that Plaintiff's "attention and concentration skills were markedly impaired due to distractibility secondary to physical pain and also because of his limited intellectual functioning." (T. 793). Plaintiff was able to count backwards from ten, but struggled with simple calculations, serial sevens and serial threes. (*Id*.). Dr. Slowik noted that: Plaintiff's recent memory skills were mildly impaired; his remote memory skills were moderately impaired; he was able to remember three out of three objects immediately and one out of three objects after a five-minute delay, but after given hints about the categories to which two objects belonged, he was able to produce one additional object. (*Id.*). Plaintiff could also recite four digits forward and two digits backwards. (*Id.*). In reviewing Plaintiff's "mode of living [,]" Dr. Slowik noted that Plaintiff could "dress, bathe, and groom himself. He has difficulty standing while cooking. Plaintiff must take breaks [and] sit down

while cleaning. Plaintiff does laundry, and his wife does the grocery shopping because of his anxiety." (*Id*.). Dr. Slowik also explained that Plaintiff does not drive but has access to a public bus. (*Id*.). Moreover, "[w]hen asked about his social life, [Plaintiff] stated that he has one friend with whom he maintains contact as well as supportive family members. Hobbies and interests include watching TV, listening to music, and playing video games." (*Id*.).

In her medical source statement, Dr. Slowik determined that Plaintiff's "ability to understand, remember, or apply simple directions and instructions is mildly to moderately limited. [His] ability to understand, remember, and apply complex directions and instructions and sustain an ordinary routine is moderately to markedly limited." (T. 794). Dr. Slowik further opined that Plaintiff's "ability to interact adequately with supervisors, co-workers, and the public is mildly limited." (*Id*.). Additionally, Dr. Slowik determined that Plaintiff's "ability to sustain concentration and regulate emotions is moderately limited." (*Id*.). Dr. Slowik concluded that Plaintiff was not limited in his ability to maintain personal hygiene and be aware of normal hazards." (*Id*.). Finally, Dr. Slowik explained that Plaintiff's "difficulties are caused by distractibility, cognitive deficits, anxiety, and lack of motivation"; and that Plaintiff's conditions "may significantly interfere with [his] ability to function on a daily basis." (*Id*.).

The ALJ found Dr. Slowik's opinion somewhat persuasive. (T. 27). The ALJ also stated that Dr. Slowik "provided the findings to support her opinion, however, the opinion is not entirely consistent with the record." (*Id*.). But the ALJ disagreed with Dr. Slowik's opinions of Plaintiff's limitations in interacting with others and sustaining an ordinary routine. (*Id*.). ALJ Smith mentioned that Plaintiff reported having panic attacks/anxiety around large crowds and the mental health records indicated that Plaintiff had difficulties with communicating and conflict management. (T. 807). As evidence of Plaintiff's ability to sustain an ordinary routine, he testified that he keeps a routine to take his medication (T. 47); he takes care of his pets by himself (T. 355), and pays his bills. (T. 357). While Plaintiff did miss some treatments and not make appointments with specialists this was due to unforeseen sicknesses (T. 362, 532), or from worsening symptoms after treatment. (T. 829). However, as the ALJ noted, Plaintiff consistently attended appointments and follows up with his providers. (T. 429-552). The ALJ further noted, Dr. Slowik's opinion was not consistent with the state agency psychiatric consultant's findings that Plaintiff was not significantly limited in sustaining an ordinary routine without special supervision. (T. 27, 83). In sum, Dr. Slowik's opinion is supported by objective medical evidence, and is consistent with some evidence from other medical sources. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2). Accordingly,

the ALJ's finding that Dr. Slowik's opinion was somewhat persuasive is supported by substantial evidence. (T. 27).

### b. Dr. Webster

On October 7, 2021, and April 22, 2022, Plaintiff's primary care provider, Dr. Webster, offered two medial opinions about Plaintiff's physical RFC through check-box questionnaires. (T. 850, 885-87). In the October 2021 opinion, Dr. Webster opined that Plaintiff could walk, stand, bend and sit with normal breaks for zero to two continuous hours maximum a day during an eight-hour workday. (T. 850). Dr. Webster did not answer the questions "[d]oes your patient need to periodically alternate walking, standing, bending, or shifting during the work day to relieve discomfort" and "[d]oes your patient need the opportunity to [relieve discomfort] *at will* throughout the work day[.]" (*Id*.) (emphasis italicized). He also opined that Plaintiff could consistently lift and carry ten to twenty pounds max as part of his regular job duties with normal breaks during an eight-hour workday. (*Id*.). In the April 2022 opinion, Plaintiff's capabilities improved greatly, and Dr. Webster opined that while sitting is impacted by Plaintiff's condition, he could sit for approximately eight hours out of an eight-hour workday. (T. 886). Dr. Webster further opined Plaintiff could stand/walk for approximately four hours out of an eight-hour work day. (*Id*.). Dr. Webster again did not answer the question whether Plaintiff should alternate sitting/standing to relieve pain. (*Id*.). Additionally, Dr.

Webster indicated that Plaintiff could safely lift, without causing excess pain or

worsening the condition, zero to five pounds frequently up to two-thirds of the day;

five to ten pounds occasionally up to one third of the day; and should not lift over

ten pounds at all. (*Id*.).

   Dr. Webster also indicated that Plaintiff's back pain and sciatic pain, the

resulting side effects of the medications Plaintiff used, would cause him pain,

fatigue, diminish his concentration, diminish his work pace, and cause him to need

rest at work. (T. 885). Dr. Webster concluded that these side effects would cause

Plaintiff to be off task "[m]ore than 33%" of a typical workday. (*Id*.). Dr. Webster

further indicated that Plaintiff's conditions would cause him to have good days and

bad days. (*Id*.). According to Dr. Webster, these fluctuations would cause Plaintiff

to miss three days of work a month. (*Id*.).

   The ALJ found Dr. Webster's Oct. 7, 2021 opinion somewhat persuasive

because he has a treatment relationship with Plaintiff and parts of his opinion were

consistent with the record. (T. 28). The ALJ found Dr. Webster's April 22, 2022

opinion partially consistent. (T. 29). The ALJ concluded that Dr. Webster failed to

support his opinion about Plaintiff's schedule and concentration limitations with

objective medical evidence and was inconsistent with evidence from other medical

sources. (*Id*.). Plaintiff challenges this evaluation, arguing that Dr. Webster's

opinion was supported by objective medical evidence and was consistent with

evidence in the record. (Dkt. No. 12 at 14-17). Plaintiff further argues the ALJ failed to explain her reasoning. (*Id*. at 16).

The Court concludes that the ALJ did not err in finding Dr. Webster's opinions somewhat and partially persuasive. (T. 28-29). The concentration, schedule, and pace limitations opined in Dr. Webster's April 2022 opinion were unsupported by explanations, unsupported by objective medical evidence, and inconsistent with evidence in the record. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2).

First, Dr. Webster offered no supporting explanation for the concentration and schedule limitations in his April 2022 opinion. (See T. 885-887). The more relevant the supporting explanations presented by a medical source are to support his opinion, the more persuasive the medical opinion will be. *See* 20 C.F.R. § 404.1520c(c)(1). Here, Dr. Webster simply opined, without explanation, that Plaintiffs impairments would cause him to be off task "[m]ore than 33%" of a typical workday, and that his impairments would cause him to miss three days of work every month. (T. 885-886). The ALJ concluded these limitations were speculative because, among other reasons, they lacked a supporting explanation. (T. 29). Substantial evidence supports that conclusion. *See Tejada v. Apfel*, 167 F. 3d 770, 773 (2d Cir. 1999); *see also Robert O. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1612 (TWD), 2022 WL 593554, at *13-14 (N.D.N.Y. Feb. 28, 2022). ("The

substantial evidence standard resolves this issue, not the lack of an overwhelming compelling analysis as cited by Plaintiff.").

Second, Dr. Webster cited no objective medical evidence in support of his conclusions about Plaintiff's concentration and schedule limitations. (T. 885-887). The more relevant the objective medical evidence presented by a medical source is to support his opinion, the more persuasive the medical opinion will be. *See* 20 C.F.R. § 404.1520c(c)(1). In *Halloran v. Barnhart*, 362 F. 3d 28, 31 n.2 (2nd Cir. 2004), the Second Circuit noted the "limited value of the standardized check-box forms, which are considered only marginally useful for purposes of creating a reviewable factual record." *See Sabater v. Colvin*, No. 12-CV-4594, at *5 n.6 (S.D.N.Y. Mar. 10, 2016) (citing cases, including *Halloran*, *supra*). There are also cases holding that check-the-box questionnaires are a proper format for a treating physician to express an opinion. *See Stephanie P. v. Comm'r of Soc. Sec.*, No. 5:17-CV-599 (ATB), 2018 WL 4344937, at *9 (N.D.N.Y. Sept. 11, 2018) (citing *Goble v. Colvin*, No. 15-CV-6302, 2016 WL 3179901, at *5 (W.D.N.Y. June 8, 2016)) (citations omitted). This Court does not dispute that check-the-box forms are widely used and are not invalid simply because of the nature of the form; however, in this case, Dr. Webster simply opined, without citation to objective medical evidence, that Plaintiff's impairments would cause him to miss three days

of work every month and to be off task for a significant period every workday. (T. 885-887).

The ALJ assigned no persuasive value to this opinion because, among other reasons, it was "not supported by the record." (T. 29). The objective medical evidence supports the conclusion that Plaintiff has a fair ability to function independently, appropriately, effectively, and on a sustained basis (i.e., Plaintiff has moderate limitations—and was not seriously limited—in his ability to concentrate, persist, and maintain pace). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 12.00(F)(2)(c)-(d) (defining "Moderate" and "Marked" limitations); *see also* (T. 78-82, 99-103, 122-26, 146-50, 850). Moreover, the longitudinal record supports years of treatment records indicating that Plaintiff had normal neurologic and mental exams. (T. 763, 771, 781, 783, 788, 822, 827, 834, 841, 856, 866, 878). Accordingly, substantial evidence supports the ALJ's conclusion that the concentration and schedule limitations in Dr. Webster's opinion are inconsistent with evidence from other medical sources. *See Tejada*, 176 F.3d at 773; *see also Courtney L.W. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1233 (TWD), 2022 WL 685290, at *4-5 (N.D.N.Y. Mar. 8, 2022).

The Court concludes that substantial evidence supports the ALJ's conclusion that Dr. Webster's opinion lacked a supporting explanation, was unsupported by

objective medical evidence and was inconsistent with evidence from other medical sources. (*Id.*); *see also* 20 C.F.R. §§ 404.1520c(c)(1)-(2).

### c. Non-Examining State Agency Consultant's E. Kamin, Ph. D. and L. Blackwell Ph. D.

Based on his review of the medical evidence[3], Dr. Kamin concluded that Plaintiff suffered from four severe impairments: CPOD, obesity, depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders. (T. 75). Dr. Kamin accordingly completed a mental RFC. (T. 82-85). Dr. Kamin concluded Plaintiff had limitations in all four categories of mental functioning (i.e., understanding and memory, sustained concentration and persistence, social interaction, and adaptation). (*Id.*); *see also generally* 20 C.F.R. § 404.1520a(c)(3). In the concentration and persistence category of mental functioning, Dr. Kamin concluded that Plaintiff was not significantly limited in his ability to: (i) carry out very short and simple instructions; (ii) perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance ("keep schedule"); (iii) sustain an ordinary routine without special supervision; and (iv) make simple work-related decisions. (T. 83-84). Further, Dr. Kamin concluded that Plaintiff had no limitations in his ability to have social interaction. (T. 84).

---

[3] The Disability Determination Explanation completed by Drs. Kamin and Blackwell indicated they reviewed the following medical evidence: treatment records from Johnson City Family Care, Wilson Memorial Hospital, Southern Tier Pulmonary, and UHS Heart & Vascular Institute, as well as medical opinions from Industrial Medicine Associates dated Aug. 9, 2021, and Aug. 11, 2021. (T. 92-94).

In the "Additional Explanation" section, Dr. Kamin cited the consultative examination from August 3, 2021, where Dr. Slowik observed Plaintiff's social anxiety. (T. 85, citing T. 793). Dr. Kamin further noted that Plaintiff could dress, bathe, and groom himself, and that he could manage money with his wife. (*Id*.). Dr. Kamin concluded that Plaintiff was "limited to unskilled work." (*Id*.). Dr. Blackwell's review of the medical evidence and his opinion was identical to Dr. Kamin's. (*See* T. 119-130).

Plaintiff alleges "the ALJ fails to state how persuasive she finds the opinions of the [non-examining state agency psychologist]" and that the ALJ failed to explain how she considered the supportability and consistency factors. (Dkt. No. 12 at 18-19). Plaintiff specifically challenges how Drs. Kamin and Blackwell found lesser limitations when relying exclusively on Dr. Slowik's opinion. (*Id*. at 12). The ALJ found "the opinions from the State Agency psychiatric consultants generally consistent" because the doctors provided reports that cite to the record to support the opinions, and the opinions are generally consistent with the record." (T. 27). It is fair to infer from the ALJ's explanation that she intended to find "the opinions from the State Agency psychiatric consultants generally *persuasive*." *Id.* (emphasis italicized). It appears that the use of the word "consistent" in this sentence is due to a scrivener's error as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2)).

Plaintiff is incorrect in stating the doctors "concluded Plaintiff did not have any limitations to sustaining routine" (Dkt. No. 12 at 12), as noted above the non-examining consultants found he was not *significantly* limited in sustaining a routine. (T. 83). Plaintiff's position is essentially that Dr. Slowik's opinion was more aligned with the record than with Drs. Kamin and Blackwell's, but this is a quintessential example of a request for the Court to reweigh the evidence which the Court declines to do.[4] *See Shyla D. v. Kijakazi*, No. 3:20-CV-1295 (DJS), 2022 WL 798158, at *6 (N.D.N.Y. March 16, 2022) (citing *Joanne R. v. Kijakazi*, No. 5:20-CV-1244 (DJS), 2021 WL 5629077, at *3 (N.D.N.Y. Dec. 1, 2021)) (citing cases).

"A non-examining state agency consultant's opinion may be relied upon where it is supported by other record evidence." *Tammy L v. Comm'r of Soc. Sec.*, No. 6:23-CV-1545(MJK), 2024 WL 4859092 at *5 (N.D.N.Y. Nov. 21, 2024) (citing *Hansen-Nilsen v. Comm'r of Soc. Sec.*, No. 5:15-CV-1528 (GTS/WBC), 2017 WL

---

[4] Plaintiff argues that "the ALJ's reasons are not overwhelming(sic) compelling…." Dkt. No. 12 at 11. The ALJ reasons do not need to be "overwhelmingly compelling," only supported by substantial evidence.

913933, at *5 (N.D.N.Y. Feb. 7, 2017) (citing *Frye ex rel. A.O. v. Astrue*, 485 Fed. App'x. 484, 487 (2d Cir. 2012)) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."), *report recommendation adopted* 2017 WL 913639 (N.D.N.Y. Mar. 6, 2017); *see also Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. Aug. 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Although brief, the ALJ's explanation and written decision allows the Court to "trace the path of [her] reasoning" for generally adopting the doctors' findings. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01; *see Cichocki*, 729 F. 3d at 178 n.3 (quoting *Mongeur*, 722 F. 2d at 1040 ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.")). It is clear from the RFC that the ALJ made detailed determinations regarding Plaintiff's ability to interact with others, citing to Dr. Slowik's report upon which the non-examining state agency consultants base their opinion. (T. 27). Therefore, the ALJ properly found the persuasiveness of the consultants' opinions.

Considering the foregoing, the Court finds the ALJ did not err in their RFC assessment, which is supported by substantial evidence, and the ALJ applied the correct legal standards. Accordingly, remand is not required.

**WHEREFORE,** based on the findings above, it is

     **ORDERED,** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12, 17) is **DENIED**; and it is further

     **ORDERED,** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

     **ORDERED,** that the decision of the Commissioner be **AFFIRMED**, and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.


Dated: March 21, 2025
     Syracuse, New York

                          _____
                          Hon. Mitchell J. Katz
                          U.S. Magistrate Judge